3, 15, 06, 8, 9. People of the State of Illinois, Appellee, by Gary Gannovick, v. Jotarius Yankaway, Appellant, by Dimitri Galtas. Good morning, Your Honors. Dimitri Galtas, I'm from the Office of the State Appellate Defender, and I represent Jotarius Yankaway. May it please the Court, Counsel, Mr. Yankaway was convicted of unlawful possession of a firearm by a felon. We've raised two claims in this appeal. First, we argue that Section 24-1.1a of the Criminal Code, which prohibits all felons from possessing a firearm, violates the Second Amendment to the United States Constitution. Second, we argue that this Court should remand this case to the trial court so that it can conduct a preliminary crankle inquiry. Your Honors, my hope is to address both of these claims today, and I'm actually going to start with the crankle issue because I don't really have very much to say about that. Before trial, Mr. Yankaway wrote a letter to the trial court, and one of the things that he said in that letter was that his court-appointed attorney told him that he was a goofball, that he should be locked up because of the way that he talked, and that he should be left to die in jail. Your Honors, through that allegation, Mr. Yankaway was not only complaining to the Court about his court-appointed attorney, he was also alleging a potential violation of his constitutional right to counsel. The constitutional right to counsel guarantees defendants an attorney who will give their client their undivided loyalty. In Strickland, the Supreme Court said that the duty of loyalty is perhaps the most basic of counsel's duties. The duty of loyalty also includes a right to conflict-free representation. And in Conduct 2, Illinois Professional Conduct 6.2, the Illinois Supreme Court has stated that an attorney labors under an improper conflict of interest if he or she views their client as sole repugnant, that that view would impair the attorney's ability to represent that relationship. Your Honors, the right to counsel guarantees a defendant more than an attorney who has the audacity to tell his client that he should be left to die in jail. Mr. Yankaway alleged a potential violation of his right to counsel. He alleged that counsel was potentially violating his duty of loyalty and potentially laboring under a conflict of interest. Therefore, the Court should have conducted a crankle inquiry. This is one of those limited cases where, under People v. Chacko, the crankle inquiry should have been done before trial because Mr. Yankaway was alleging a conflict of interest. The Court did not conduct a crankle inquiry at all in this case, and it erred by failing to do so. Therefore, we respectfully request that this Court, at the very least, remand this case to the trial court so that it can conduct the crankle inquiry. Is there anything that happened during the jury trial that suggests to you counsel was not representing his client well? No, and there doesn't have to be. When you conduct, the Supreme Court has said that as long as the defendant alleges a potential violation, the inquiry must be done. I would also note that, and this is the reason why I made the argument in my brief that this would be a per se conflict. When you have a per se conflict, it's a situation where one of the requirements the Supreme Court has stated is that counsel's conflict may affect counsel in subliminal ways that may not be immediately apparent to counsel. And this could be one of those cases where counsel is saying to himself, this guy should be in prison. He needs to be locked up. And subliminally, that view may affect his performance. And we have no way of evaluating that. Thank you. With that said, Your Honors, my primary claim today and request for relief is that this Court hold that Section 24-1.1a violates the Second Amendment and that this Court reverse Mr. Yankovic's conviction outright. The statute at issue burdens a fundamental constitutional right. And what that means is that the statute does not enjoy the usual presumption of validity in the face of a constitutional challenge. Furthermore, Mr. Yankovic does not bear the burden of establishing that the statute is unconstitutional. Because it burdens a fundamental constitutional right, it's the State's burden to show that it is constitutional. That's the Federal law? That's Federal and State. In my motion of statutional authority, if you look at the Illinois Supreme Court's recent decision in Keeble v. Charest, the Supreme Court holds the State to a burden to establish that the statute satisfies means and scrutiny. The general rule in a rational basis case would be that that burden falls on the party challenging the statute. But when the statute burdens a fundamental constitutional right, it is no longer presumed constitutional. In the State, there is a burden. Case law makes clear that the State must satisfy that burden with empirical evidence. Both the Seventh Circuit has said that, other circuits have said that, and so has the Illinois Supreme Court in Charest. That's also what the government must do in a First Amendment case. Of course, a review would not have any way to evaluate the State's claim that the statute survives scrutiny in the absence of empirical evidence. Your Honors, the State hasn't presented any empirical evidence at all in this case. Not even the cases that it cites in its brief rely on empirical evidence. And therefore, the State has fallen well short of meeting its burden. In Charest, the Supreme Court held the State to its burden to present empirical evidence. It concluded that the State failed to do so and then struck down the firearm prohibition. Now, in Charest, the State had actually presented some empirical evidence, and the Court found that that was insufficient. Again, Your Honors, we have no empirical evidence in this case. Therefore, it's our position that this Court can do one of two things. This Court could strike down the statute because the State should have presented empirical evidence and it failed to do so. It failed to meet its burden. Now, we recognize that we first raised this issue in this Court. Therefore, the State did not have an opportunity to present empirical evidence in the Circuit Court. So what this Court could do is it could remand this case to the Trial Court to give the State another opportunity to present empirical evidence. And then Mr. Yankley would have an opportunity to present any evidence in response. That is what the United States Court of Appeals for the Fourth Circuit did in United States v. Chester. That's also what the D.C. Circuit did in Heller 2. I said both of those in my brief. So if this Court does not feel that an outright reversal in striking down the statute at this time is the best remedy, we would have no objection to a remand. I want to make a couple points about Heller and also the case of the State's sites in this brief where courts have struck down not only this statute. Not struck down but upheld the statute that we're dealing with today involving banning felons from possessing firearms. The law in Illinois pursuant to People v. Chavez and also in the Seventh Circuit pursuant to United States v. Williams and Zell is that even if a firearm restriction falls within one of the presumptively lawful categories or long-standing prohibitions that the Supreme Court referred to in Heller, if it cannot be determined as a matter of fact that the conduct at issue falls outside the scope of the Second Amendment, you still have to do a means scrutiny analysis.  Now the Seventh Circuit has stated that the historical evidence as to whether felons were allowed to possess firearms at the time of the Second Amendment and at the time of the Fourteenth Amendment, whether they had a right to do that, the historical evidence is unclear. It's inconclusive at best. Scholars disagree. So for that reason, the Seventh Circuit goes to the means end scrutiny. What that means is we're in a position where the state needs to present empirical evidence, and the state has not done that. The second thing I'll say about Heller and the state's case law is that Heller did not address this statute. Heller did not address its federal counterpart. Neither any case that the state cites in its brief, nor any case that I have found, addresses the argument that I have made in this Court as to why this statute does not survive scrutiny, and that's because this statute is markedly over-inclusive. It's substantially broader than necessary, and the United States Supreme Court has said that if the statute is markedly over-inclusive, it doesn't even survive intermediate scrutiny. Furthermore, no case that the site has stated in its brief, or no case that I have found, upholds a felon in possession statute by relying on actual empirical evidence. All they do is cite to Heller, and it's our position that that is not good enough, because all Heller says is precautionary language. It says, this is the holding in our case. Don't read anything past it. And that's exactly what the Seventh Circuit said in itself. It says precautionary language. Don't read too much into it, because ultimately if the United States Supreme Court were to strike down a felon in possession statute, it would have to go through the historical analysis, similar to what they did in Heller, to first address whether felons had a right at the time the Second Amendment was ratified, or if they had a right to possess firearms. The Supreme Court has yet to do that, and it would need to do that before it upheld or struck down a statute. Unless, do you have any further questions? Is that any felony? Sorry? Is that any felony? I'm not sure I understand your question. The prohibition against possession by a felon, is that any felony? Our statute, yes, any felony. All felonies. Whether it's an Illinois felony or a felony from another jurisdiction. A blue-collar felony? Yes. In my brief, I cited Martha Stewart, that can make it a blue-collar felony. Is Martha Stewart dangerous with possessing a gun? I don't think anyone would say that. So there's no doubt that this statute is over-inclusive. What we need to figure out is how much so, and you need to figure that out with empirical evidence. It cannot be assumptions or speculation or even plausible statements. You actually need evidence to see how over-inclusive is this statute, and is it substantially broader than necessary. And I would also add that the Seventh Circuit, in one of the cases that the state cites in its brief, Yancey said that statutes that prohibit all felons from possessing a firearm are wildly over-inclusive. If there are no further questions, we respectfully request that Your Honors reverse Mr. Yankovic's conviction outright. If Your Honors do not believe that that relief is warranted, we would alternatively request that you remand this case to the trial court for further proceedings on this constitutional challenge and also a cranking inquiry. Thank you. Mr. Van Litterburg. May it please the Court, Counsel. With respect to the second issue, the cranking hearing, it would just be the people's position, two brief points. You have to take and read the comment in the context of the entire letter, and if indeed this Court were to take and find that there was somehow a claim of ineffective assistance of counsel at the 402 conference, then a re-answer cranker would be appropriate. But the thing is, what the defendant's letter is all about was really trying to take and request and get something that his counsel couldn't get at the Rule 402 hearing. And that's what the entire gist of his letter is about. He wants some kind of a medical release. He wants to be able to show people he can take and change, et cetera. So that was the tenor of his letter. I don't read it as necessarily claiming ineffective assistance. And because of the fact that it was pretrial and because of the fact that counsel didn't do anything, that was complained about during the course of the trial. What the defendant tries to do is the defendant tries to assert a per se conflict of interest. And that is where I have a very serious problem with the argument because per se conflicts of interest are very limited. They're very limited because of the fact that there really are only three situations that have been recognized. One is where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution. Two, where defense counsel contemporaneously represents a prosecution witness. And three, where defense counsel was a former prosecutor who had been personally involved with the prosecution of the defendant. Those are the three categories recognized in Illinois as per se conflict. This does not fall within those categories. So we make the argument that it's per se because in a per se, if you have that, then the defendant doesn't have to show prejudice and doesn't have to show that counsel's representation wasn't any way deficient. And that's what they really rely upon. Because they can't show that counsel's representation was deficient, so they have to create a per se conflict in order to arrive at that conclusion. So that's the reason why in this case, I think, written in context, I don't think that there was any need for a cranial coherent pretrial. I don't think there's need for one now. Do you have a question, Your Honor? I have a concern. If the code of professional conduct requires certain type of conduct, certain type of attitude, if you will, on the part of counsel, and that's raised even if it's not raised specifically and expressly as a conflict, doesn't that give rise to a need to have a cranial conference, a cranial hearing? The rule that's cited is a rule for a reason that counsel can give to the trial court to avoid being appointed as counsel. That's what that rule was intended for. It's intended for counsel to take and use that so that, you know, this case I cannot handle because of, you know, whatever, okay, you know, the defendant is this, you know, and so I can't. It gives the trial judge the upfront, in your face, reason why, you know, I don't want to do this. That's what the purpose of the rule is. So I'm not sure that it's applicable here. The rule itself is applicable. And I can see Your Honor's concern, okay, because, you know, the comment that is elicited here, or the comment that the defendant makes is one that could clearly and very easily be cleared up by a question. Asking counsel, what went on? What did you say? Okay, so you explain this, okay? That is, if you will, part of CRANCL. But there has to be, but CRANCL is limited in what it can do, and we try to take and keep the parameters on things like this, cases within the parameters of what the case is, and to be able to take and make this argument by trying to create a per se conflict where there really isn't any, and there really isn't any, at least we can see, any effective assistance on the record, it's difficult to take and justify saying that this deserves a CRANCL hearing or that this falls within CRANCL. That's because it wasn't done at the beginning, and they're trying to assert the claim at the end. But when I looked at the latter, it seems to me that regardless of whether there's a rule, regardless of whether it falls under a statute, that what the defendant said in there is enough to trigger an inquiry on the part of the court. And like I said, if that is where the panel goes with this, then some sort of inquiry is going to be ordered. Whether or not, and how it goes about doing that, and the law and stuff like that, might be something that would be questioned potentially, but basically it's a situation where at least based on what is presented here and the case law and things, I don't think this situation falls within CRANCL, and it certainly doesn't fall within per se conflict. And that's basically the basis of our argument. Okay, going on to the constitutionality. Facial challenge. That is making a facial challenge to the statute. And first of all, with respect to who has the burden of showing what, in People v. Burns at paragraph 27, in signing and quoting from Patel, the United States Supreme Court explained the proper analysis for facial challenges. Under the most exacting standard the court has prescribed for facial challenges, a plaintiff must establish that a law is unconstitutional in all of its applications. Okay? It is the defendant's burden. He's the one challenging the statute. It is his burden to establish that the UUWF statute is unconstitutional in all of its applications. Not just to nonviolent felons, or blue collar felons as your Honor pointed out. The point is, even by his own argument, in saying that, in almost accepting the fact, that it is reasonable to keep firearms out of the hands of felons. Now you have violent felons, you have nonviolent felons. If you can apply this statute to violent felons, facial challenge falls flat on its face. Because it is not. The fact that a statute could be found unconstitutional under some set of circumstances does not establish its facial invalidity. The situation exists where the statute can be applied validly. The facial challenge must fail. Hill v. Cowan, 202 Illinois 2nd at 157. The Illinois Supreme Court couldn't make it any clearer. Just based on that alone, the defendant's argument fails. When we talk about burdens and trying to put the burden on the state, the defendant has to establish for this scrutiny to be applied. Because in this case, the statute, since it can be applied, is constitutional, as it's written. If you're going to take and have to do what Charisse says, is Charisse says that when you're trying to take and determine whether or not how a statute fits in with the Second Amendment, they said at paragraph 35, it is not a question of strict versus intermediate scrutiny, but how rigorously to apply intermediate scrutiny to address the means and inquiry. Basically, it is not strict scrutiny, and it is not, if you will, a standard intermediate scrutiny. It's a sliding scale. And depending upon how much the Second Amendment impacts the constitutional right or value, the stricter or the more evidence, the more justification the government has to give or the state has to give for the statute. In this case, because of the fact, and by the way, what we also have in this case, and the reason why we made the argument that this statute falls outside of the scope of the Second Amendment, such that it doesn't offend it and it doesn't even go to the scrutiny level. Again, in Burns, in paragraph 25, they were discussing their decision in Aguilar, they were pointing out how they made a kind of a misstatement, they placed improper limiting language, etc. But I found this particular aspect to be interesting. On its face, this statutory provision, 24-1.6A1 and A3A of the AAUW statute, constitutes a flat ban on carrying ready-to-use guns outside the home. It categorically prohibits the possession and use of an operable firearm for self-defense outside the home, and as such, it amounts to a wholesale statutory ban on the exercise of a personal right that is specifically named in and guaranteed by the United States Constitution as construed by the United States Supreme Court. It is precisely because the prohibition is not limited to a particular subset of persons, such as felons, that the statute as written is unconstitutional on its face. Because this statute is not a wholesale prohibition, but is a prohibition on a subset of individuals, it does not violate, it is not a facial challenge to the statute that can be levied to claim that this statute is unconstitutional. Basically, because of the fact that we're dealing with felons, as I said, and because felons are an acceptable subset, and acceptable violent felons are a subset of individuals for whom we can prevent this, the facial challenge collapses. But in terms of the scrutiny, we don't even have to scrutinize because of the fact that since this statute, this statute that deals with felons, doesn't go to the heart of the core of the Second Amendment, as did Aguilar, as did Cherise. Cherise was within 1,000 feet of, I think, a public park. And they held no. That was facially invalid because everybody, felons, nonviolent felons, me, you, everyone in the courtroom, none of us could have a firearm by a park. That violated the Second Amendment. Counsel, that's two minutes. Thank you. When reviewing that, what they did is where the empirical evidence came, it's because of the impact of the statute to the core of what the amendment was really meant for. And what it did is because of that connection, that impact on the core of the Second Amendment, the means in scrutiny, the inquiry became stricter. We don't have that in this case because we are dealing with a subset of recognized individuals who are lawfully prohibited from having weapons. And as a result, we don't have to put in this empirical evidence that the court said in Cherise that they needed because of the lesser scrutiny that is needed to assess this statute in terms of the Second Amendment. And while it appears as though the Statute is a total ban, under the firearm owner's identification, 24-1.1A notes this, under 430 ILCS 62-10 small c, allows for the future eligibility of nonviolent felons to possess a firearm by permitting them upon consideration of well-dominated factors to petition for a firearm license to permit them to possess a firearm lawfully. So for those nonviolent felons that we were speaking of, there is an exception that the statutes have created in order to balance protection of the public and the right of nonviolent felons to possess a firearm for self-defense. So no matter how this statute is analyzed, the defendant's constitutional challenge fails. And for that reason, we would ask this court to reject the defendant's argument and affirm. If there are any other questions, I'll be happy to respond. Thank you very much. Thank you. Mr. Carlson. Briefly with respect to Krankel and counsel's claim that the gist of the letter is not a complaint about counsel. The gist of the letter doesn't matter. The question is whether it was a complaint about counsel made. Did the defendant allege potential violation? We would like this court's attention to Peter v. Pence. In that case, the defendant made a complaint about counsel during evocation. Certainly that's not generally the time to make a complaint about counsel, but he did. And that was sufficient in that case to require a Krankel hearing. With respect to the claim about there only being three categories of per se conflicts such as the one the Supreme Court has identified, that is true. But to say that the Supreme Court would never create a fourth or that there is a possibility of fourth isn't exactly a good way to look at it. And in my reply brief for that point, I cited People v. Frazier from the Ninth Circuit. And what happened in that case, and excuse my language, but I think it's necessary to prove a point, the defendant made a claim that his attorney called him a stupid nigger son of a bitch and that he said he hoped he received life in prison. Now, what the Ninth Circuit did in that case is be not only remanded for an evidentiary hearing, but they said if the defendant proved at that hearing that those statements were in fact made, prejudice would be presumed, the defendant would be entitled to a new trial. Now, what is it about this statement, the quote from this defendant's attorney, that would create this per se conflict? Well, it would create a per se conflict. It was an inflammatory term used in the federal case. Certainly the federal case is more inflammatory. I was citing that case just to point out that that would be a per se conflict that does not fall within one of the recognized categories. Do you agree we don't have that kind of language in this case? Sure. Calling your client a goofball? Do you think that's inflammatory? No. It's the statement that he told my client, allegedly, that he should be left to die in jail. An attorney who's supposed to have undivided loyalty to her client would not sell that to her client. And what makes this a per se conflict of interest is that you have counsel effectively having a conflict with himself. On the one hand, he wants his client to die in jail. On the other hand, he has a job to do and he needs to defend his client. But if that's how he feels about his client, is he really doing the best job that he can? Is he really serving the need of his client? And regardless of how well counsel performs at trial, if he feels that way, he may not be performing to the level that the Constitution requires. He may be subliminally affected by the way he feels about his client. Do you think that's unusual? Except that in this case it's broken. Right. Whereas a lot of attorneys and constituencies might say, this guy is horrible. Sure. He represents a jail-warrant. You're in trouble. Sure. But it never says it. And it doesn't know who his job representative is. How do you distinguish that? I think there's attorneys who say, you know, I don't like this guy. You can have attorneys say, you may have even did it. But they can get past that and they have a job to do and they do it. They don't tell their client that they should die in jail. I mean, that's extreme, to actually tell your client you should die in jail. I've never told a client they should die in jail. And I seriously doubt that the constitutional right to counsel is open. That the Sixth Amendment said, okay, defendants can have an attorney who tells them they should die in jail. The Sixth Amendment is not that important. So the impact of the statement on defendant was it generated the letter to the trial judge saying, you know what, what my lawyer told me causes me to believe I need help. That's pretty effective, isn't it? To communicate with your client in a way that makes him believe he needs some treatment. I'm not sure I'm understanding your question. What was the reason defendant wrote the letter? He wanted help. He wanted medical release. And it was, he says, I'm tired of people saying bad things to me. And my attorney said this to me. And that's not good. Maybe there's a mustard seed of truth to it. That he is a goofball, that he does talk funny. And since the client reacted in a positive way to that statement, I'm not sure it's an effect. My client's never been convicted of a violent felony. And I don't think it's okay for an attorney to tell him that he should be let to die in jail. He just got, when the issue here is was he possessing a firearm. There's you're a goofball, there's you need help. And on the other side, there's you should die in jail. My client did nothing to merit dying in jail. Well, the statement was I should let you die in jail. It's not you should die in jail. He's frustrated with his client. You can tell that. Right. And I think we need a hearing. We need some questions here from the judge to determine how exactly frustrated were you. Were you frustrated to the point where you didn't want to be representing this person and you couldn't? I think that's a valid inquiry that needs to be made. Counsel, is there a court order of witness here? Previous hearing? No, I don't believe so. So the letter didn't generate anything. No. Thank you. Thank you, Mr. Roberts. Thank you both for your arguments today. The witness is not under advisement to back you with a witness. Is that a sure?